**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| CINDY R. CASTILLO, individually and on behalf of all others similarly situated,<br><br>*Plaintiff-Appellant*,<br><br>v.<br><br>BANK OF AMERICA, NA, a North Carolina Corporation; DOES, 1–10, inclusive,<br><br>*Defendants-Appellees.* | No. 19-56228<br><br>D.C. No.<br>8:17-cv-00580-<br>DOC-KES<br><br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted September 3, 2020
Pasadena, California

Filed November 18, 2020

Before: Ronald M. Gould and Sandra S. Ikuta, Circuit
Judges, and David A. Ezra,[*] District Judge.

Opinion by Judge Gould

---

[*] The Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation.

## SUMMARY[**]

### Class Certification

The panel affirmed the district court's order denying a plaintiff's motion to certify a class regarding her overtime-wage claim under California law against Bank of America, N.A.

The plaintiff sought to certify a class of hourly-paid, non-managerial call center workers. The panel held that she established the requirements of commonality and typicality under Fed. R. Civ. P. 23(a)(2)–(3), but not predominance under Rule 23(b)(3) because the challenged Bank of America policy either did not apply or did not cause injury to many employees.

## COUNSEL

Mitchell J. Murray (argued), James R. Hawkins, Gregory Mauro, and Christina M. Lucio, James Hawkins APLC, Irvine, California, for Plaintiff-Appellant.

Kathryn M. Barber (argued) and Matthew A. Fitzgerald, McGuireWoods LLP, Richmond, Virginia; Matthew C. Kane, McGuireWoods LLP, Los Angeles, California; Sylvia J. Kim, McGuireWoods LLP, San Francisco, California; for Defendants-Appellees.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

# OPINION

GOULD, Circuit Judge:

This appeal arises from a dispute regarding the proper method of calculating overtime wages under California law. Plaintiff Castillo sought to represent a class of more than 5,000 hourly-paid, non-managerial call center workers in California for numerous wage and hour violations allegedly committed by Defendant Bank of America, National Association ("BOA"). As relevant to this appeal, Castillo sought to certify a class regarding her overtime-wage claim. BOA maintains that Castillo did not satisfy the mandatory requirements of commonality and typicality, under Fed. R. Civ. P. (FRCP) 23(a)(2)–(3), or the requirement, mandatory in the circumstances here where it is the only basis asserted for satisfying FRCP 23(b), of predominance of common issues.[1] FRCP 23(b)(3).

In response to Castillo's Motion for Class Certification, the district court found that Castillo had satisfied the requirements of commonality and typicality under FRCP 23(a)(2)–(3), but not predominance under FRCP 23(b)(3). This appeal followed.

We hold that: (1) Castillo has established commonality; (2) Castillo has established the typicality of her claim; but that (3) Castillo has not established predominance, which was essential to Castillo's class action claim, because the challenged BOA policy either did not apply or did not cause

---

[1] *See* FRCP 23 and *Zinser v. Accufix Rsch. Inst.*, 253 F.3d 1180 (9th Cir. 2001).

an injury to many employees.[2]   Accordingly, we affirm the district court's denial of class certification.

---

[2] Rule 23(b) provides that a class action can be maintained if one of its elements is present, and the only 23(b) factor asserted by Castillo is FRCP 23(b)(3), common issue predominance.   The full text of Rule 23(b) reads:

> (b) TYPES OF CLASS ACTIONS. A class action may be maintained if Rule 23(a) is satisfied and if:
>
> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class;
>
> or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for

## I

This case arises from a dispute regarding the proper method of calculating overtime wages under California law. Under California law, employers must pay non-exempt employees who work overtime a premium on top of their "regular rate of pay." Cal. Labor Code § 510(a); *see also Alvarado v. Dart Container Corp. of Cal.*, 411 P.3d 528, 533 (Cal. 2018).

Castillo worked as an hourly employee at a BOA call center until September 2016. BOA operates thirteen call centers in California where, from March 2013 to September 2018, BOA employed 5,031 employees to handle calls regarding banking and investment services offered by BOA.

During this period, employees could receive a flat-sum, nondiscretionary incentive bonus ranging from $350 to $2,100 per month. If employees worked overtime and received a bonus during the same period, BOA would apply the bonus to the employee's straight pay to calculate the

fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

employee's regular rate of pay for purposes of overtime premiums.

BOA's methods of payment can be divided into two separate periods.  These periods are distinguished by both the time period and the way bonuses were calculated and paid.

During the first period, BOA "divided the incentive pay amount by the number of total hours worked in the previous two pay periods, even if those two pay periods did not coincide with the month for which the incentive pay compensated, then multiplied that amount by the overtime hours worked in those pay periods."

For the second period, BOA used another method. Under this second method, BOA "divide[d] the month's incentive pay by weekdays in the month regardless of how many days an employee actually worked that month."  BOA then "multiplie[d] that number by five, representing the days worked in a week, regardless of how many days an employee actually worked."  BOA then divided "that number by total hours worked instead of only non-overtime hours worked." Finally, BOA would then divide "that number by two to get the new overtime 'half rate,' which it multiplied by the overtime hours worked to retroactively pay the underpaid overtime amount."

In March 2017, Castillo filed a Class Action Complaint against Defendant-Appellee BOA.    After several amendments and motions to dismiss, including one that was granted in part and denied in part, Castillo filed her Fifth Amended Complaint.  Castillo alleged three claims for (1) "failure to pay minimum wages," (2) "failure to accurately pay overtime wages," and (3) "failure to provide second meal periods."  Castillo also made several additional

claims (the Fifth, Sixth, and Seventh Causes of Action) that were derivative of the three substantive claims.

Castillo moved for class certification in May 2019. In opposition to class certification, BOA submitted several evidentiary objections and a motion to strike certain evidence, which the district court denied, stating that it would "not engage with such frivolous objections at the class certification stage." However, the district court refused to consider a supplemental expert report filed with Plaintiff's Reply to Defendant's Opposition, on the basis of which Castillo argued that she was undercompensated by $14.99. The district court reasoned that the belated proffer of new opinions and data were improper.

The district court denied class certification. For both the first and third claims—the minimum wage claim and the meal break claim—the district court found no commonality, no typicality, and no predominance. On the second claim— the overtime-wage claim—the district court found commonality and typicality, but found that there was not predominance.

Challenging only the denial of the second claim—the overtime-wage claim—and any claims derivative of it, Castillo timely appealed. FRCP 23(f). The district court had jurisdiction under 28 U.S.C. §§ 1331, 1332(d)(2), & 1367, and we have jurisdiction under 28 U.S.C. § 1292(e).

## II

"A district court's class certification ruling is reviewed for abuse of discretion." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 984 (9th Cir. 2015); *see also Zinser*, 253 F.3d at 1186. A district court's decision certifying a class or denying class certification will be

upheld unless it "identified [or] applied the [in]correct legal rule" or its "resolution of the motion resulted from a factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc).  Moreover, a district court's class certification decision may be affirmed on any ground supported by the record.  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

## III

### A.  Commonality

"The requirement of 'commonality' means that the class members' claims 'must depend upon a common contention' and that the 'common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'"  *Vaquero v. Ashley Furniture Indus., Inc.* 824 F.3d 1150, 1153 (9th Cir. 2016) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  Even a single common question of law or fact that resolves a central issue will be sufficient to satisfy this mandatory requirement for all class actions.  *Id.* at 359.

In its response, BOA argues that the district court improperly found commonality, and that the district court's decision not to certify the class should be affirmed on that alternative ground.  BOA contends that there are no common questions because the proposed class's claim involves two separate pay policies, over two different time periods, which raise separate questions of liability.

But Castillo counters that "each policy applied uniformly to all putative class members employed during the period in which the policy was in effect." So, all putative class members were subject to one of the two policies for calculating overtime wages during the two periods that they were in effect. The alleged defect, that "BOA continued to use all hours worked in the divisor," was "equally applicable to all Class Members." Castillo argues that the differences between the policies do not defeat commonality, and she relies on the district court's holding that BOA had not provided evidence that its calculation of overtime wages "was not universal throughout the California locations." In conclusion, Castillo argues that the question of whether or not BOA's policy for calculating overtime wages using total hours worked in the divisor is lawful under California law presents a purely legal question that is clearly capable of class wide resolution.

We agree with Castillo's interpretation. Here, Castillo's overtime-wage claim presents at least one common question central to her claim: whether BOA's policy of calculating overtime wages by using total hours worked in the divisor is lawful.

Although there are differences between the two policy periods, a common question remains regarding the lawfulness of BOA's using total hours worked in the divisor. It is true that BOA may have used different inputs, and the policies may have applied differently because of different employees' various fact situations during two different time periods. But a common legal question exists central to determining liability.

We agree with the district court's conclusion that "[a]t least as to commonality, Plaintiff has shown that whether

Defendant's formula was unlawful is a common question that can be answered on a classwide basis."

## B.  Typicality

"The typicality prerequisite of Rule 23(a) is fulfilled if 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (quoting FRCP 23(a)(3)), *overruled on other grounds by Dukes*, 564 U.S. at 338).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id.*

In its decision, the district court decided that Castillo's claims were typical of the class.  The district court held that the submission of the expert report was improper.  But the court held that "regardless of the improper filing, Plaintiff had already established standing to assert this claim."  The district court noted that Castillo had included evidence in her motion regarding her typicality in this regard, "i.e., that Plaintiff received a bonus and worked overtime in the same pay periods."   The court held that this demonstrated "[p]laintiff was subject to Defendant's policies regarding its inclusion of bonuses in the regular rate of pay for purposes of calculating overtime and suffered injury therefrom."

In its response, BOA argues that Castillo's claims were not typical of the proposed class.  BOA also argues that Castillo did not properly provide evidence of typicality, including that Castillo improperly filed a Supplemental Expert Report.  Finally, BOA argues that even if Castillo had shown she had experienced an injury under the 2016 policy, she did not suffer any injury under the 2017 policy.

We conclude that the district court properly found that Castillo established typicality.  The district court excluded the improperly submitted Supplemental Expert Report and did not consider it for purposes of its decision.  Instead, the district court found that Castillo submitted evidence showing typicality among her claims and the claims of other class members.  Castillo has shown that she "was subject to Defendant's policies regarding its inclusion of bonuses in the regular rate of pay for purposes of calculating overtime and suffered injury therefrom."

Although there are differences between the two policies, the evidence demonstrated that Castillo was subject to BOA's policies and suffered injuries.  Castillo's claims arise from the same allegedly unlawful policy of using total hours worked in the divisor.  For this reason, Castillo's claims are "reasonably co-extensive" with the putative class members, and so Castillo has satisfied the requirement of typicality.

## C.  Predominance

"Under Rule 23(b)(3), a plaintiff must demonstrate the superiority of maintaining a class action and show 'that the questions of law or fact common to class members predominate over any questions affecting only individual members.'"  *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 596 (9th Cir. 2012) (quoting FRCP 23(b)(3)).  "[T]he focus of the predominance inquiry" is whether "a proposed class is 'sufficiently cohesive to warrant adjudication by representation.'"  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).  But the rule "does not require a plaintiff seeking class certification to prove that each element of their claim is susceptible to classwide proof," so long as one or more common questions predominate.  *Id.* (alterations and internal quotations marks

omitted); *see also Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).

Individual differences in calculating the amount of damages will not defeat class certification where common issues otherwise predominate. *Vaquero*, 824 F.3d at 1155. However, "[i]f the plaintiffs cannot prove that damages resulted from the defendant's conduct, then the plaintiffs cannot establish predominance." *Id.* at 1154. This general rule goes to the crux of the issue on appeal here.

To ensure that common questions predominate over individual ones, the court must "ensure that the class is not defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 (9th Cir. 2016) (citation omitted). If many class members have no claim whatsoever because they "were never exposed to the challenged conduct to begin with," the class does not satisfy Rule 23(b)(3). *Id.* at 1136; *see also Moore v. Apple Inc.*, 309 F.R.D. 532, 542 (N.D. Cal. 2015) ("The inclusion of class members whom, by definition, could not have been injured is . . . indicative of the individualized inquiries that would be necessary to determine whether a class member has suffered any injury in the first place.").

BOA contends that Castillo has not established predominance because she has sought to certify a class that would require highly individualized inquiries to determine whether class members have suffered an injury in the first place. Although Castillo contends that *Alvarado*, 411 P.3d at 528 establishes liability, making all of the alleged individualized inquiries mere questions of damages (and not liability), BOA has persuasively argued that Castillo has not properly established predominance. Those employees who

did not work overtime or did not earn a bonus during the same period in 2016 or 2017 can have no claim for compensation based on an erroneous method of overtime-rate calculation.

Castillo and BOA disagree over the importance of *Alvarado*. BOA notes, correctly, that *Alvarado* says nothing about class certification or predominance (under Rule 23 or otherwise). But *Alvarado* is not irrelevant. Rather, *Alvarado* could be an important part of Castillo's case for proving BOA's liability. *Alvarado* focuses on the proper way to calculate the per-hour value of a flat sum bonus earned by weekend workers. *Alvarado*, 411 P.3d at 537; *see also id.* at 539 n.6 ("We limit our decision to flat sum bonuses comparable to the attendance bonus at issue here."). *Alvarado* arose from allegations by employees that Dart was improperly calculating "attendance bonuses." *Id.* at 530. As part of the challenged calculation, Dart would use total hours (including overtime hours) in the divisor. *Id.* at 543.

In its opinion, the Supreme Court of California held that this method was improper under California Law. *Id.* The Supreme Court of California held that the proper method of calculating these bonuses under California law is to use only non-overtime hours in the divisor. *Id.* at 544.

But while *Alvarado* could bear on the lawfulness of BOA's use of total hours worked in the divisor of its overtime formulas, it is not sufficient to establish predominance where a large portion of the proposed class either (1) did not work overtime or did not receive a bonus in the same period, and thus could not have been exposed to BOA's overtime formulas in the first place; or (2) if they were exposed to a formula, they were not underpaid and thus were not injured. *Alvarado* does not allow Castillo to demonstrate that the court could decide, on a classwide

basis, issues of liability for all class members. Instead, determining liability for all class members would require complicated individualized inquiries. Although this method of calculation has been deemed improper, the use of the method to calculate overtime wages is not evidence of harm in every instance to all employees, for those who did not work overtime or receive a bonus in the same period, as well as those who were overpaid for it have no actual injury and hence have no claim.

Castillo's interpretation of *Vaquero* is also flawed. *Vaquero*, 824 F.3d at 1154. It is true that *Vaquero* stands for the proposition that individualized damages calculations do not defeat predominance. *Id.* But this does not rebut BOA's argument that the question of whether the putative class members were ever "subject to [BOA's] overtime calculation policy and ever underpaid as a result goes to *liability* rather than damages."

*Vaquero* involved a question of whether sales employees were paid for non-sales work. *Id.* at 1152. This question could be uniformly resolved. *Id.* If the defendant did not pay for non-sales work, the remaining question of *how much* should have been paid was a damages question which would not defeat predominance. *Id.* at 1155.

*Tyson Foods* is also instructive. *Tyson Foods* held that a plaintiff can show that representative evidence "is a permissible method of proving classwide liability" if "each class member could have relied on that sample to establish liability if he or she had brought an individual action," and the representative evidence "could have sustained a reasonable jury finding" as to a key issue of liability. 136 S. Ct. at 1046–47. In *Tyson Foods*, employees sued Tyson Foods for a policy of not paying them for time spent "donning and doffing" protective gear. *Id.* at 1042. The

policy alone was not enough to establish liability, though all employees were exposed to it. *Id.* at 1046. Rather, class member had to demonstrate that each of them had worked more than forty hours in a week to show they were owed wages for time spent donning and doffing and that Tyson Foods was liable due to the injury caused by the policy. *Id.*

To determine liability would have required individualized inquiries, like in this case. But in *Tyson Foods* the plaintiffs overcame this by submitting representative evidence of the hours class members worked. *Id.* at 1046. This common method of proof allowed the plaintiffs to establish Tyson Foods' "classwide liability." *Id.* Later, damages could be decided individually.

This case differs from *Tyson Foods* because Castillo cannot provide a common method of proof to establish BOA's classwide liability. Unlike in *Tyson Foods*, here there is no common proof of liability, because a large portion of the proposed class was never exposed to the challenged formulas or was not underpaid, and thus could not have been injured by those formulas in the first place. The holding in *Tyson Foods* highlights Castillo's disagreement with the holding of the district court. Castillo contends that the district court erred by considering BOA's "predominance attack" to be a question of liability, and not damages. This is wrong. The issue is not that Castillo is unable to prove the extent of the damages suffered by each individual plaintiff at this stage. Instead, it is that Castillo has been unable to provide a common method of proving the fact of injury and any liability. Unlike in *Tyson Foods*, proof of liability in this case would require highly individualized inquiries. But Castillo has provided no common method of proof, or representative evidence of proving classwide liability on which each employee could have relied. Castillo has sought

to certify a class but cannot show that questions of law or fact common to class members predominate.

Castillo's misunderstanding of *Vaquero* and *Tyson Foods* lies at the heart of the issue in this case. Put simply, Castillo has sought to certify a class that fails predominance, because many of its members were never exposed to the challenged formulas or, if they were, were never injured by them. Some of the putative class members were (1) not exposed to one or both overtime policies, (2) paid adequately by one or both overtime polices, or even (3) overpaid by one or both of the overtime policies.

When attempting to certify the class, Castillo sought to add every call center employee who worked during the class period. She did not filter the putative class members to exclude those who were never exposed to either policy.[3] So, the instant case is unlike cases involving non-payment of minimum wages, for instance, where by not being paid minimum wages, all putative class members who were not paid minimum wages suffered an injury. Instead, this case raises complicated questions of who was ever exposed to one or both policies, and whether those who were exposed were harmed in a way giving rise to liability. *See, e.g.*, *Torres*, 835 F.3d at 1138 ("In sum, pursuant to Rule 23, the court's task at certification is to ensure that the class is not defined so broadly as to include a great number of members who for

---

[3] In fact, a bank expert estimated that roughly 35.2% of putative class members employed by BOA before January 2017 either never received an incentive payment, or never worked overtime during a period for which they received a bonus. Further, BOA has estimated that around 41.7% of those in the Bank's sample never received a bonus or never worked overtime during a period for which they received a bonus. A large portion of the proposed class was therefore never exposed to the challenged policy.

some reason could not have been harmed by the defendant's allegedly unlawful conduct.").

Castillo has not provided a common method of proof to determine liability and has not rebutted evidence that many of the class members were not affected by BOA's overtime policies. For these reasons, Castillo has not established predominance.

Also, Castillo's arguments regarding an alleged "negation" defense by BOA are misplaced. Plaintiff cites several cases rejecting employer attempts to "average" out underpayment in one period with over payment in another. *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 319 (Cal. Ct. App. 2005); *Ferrell v. ConocoPhillips Pipe Line Co.*, 2010 WL 1946896, at *8 (C.D. Cal. May 12, 2010); *Morse v. ServiceMaster Global Holdings Inc.*, 2011 WL 2470252, at *3–4 (N.D. Cal. June 21, 2011). But the issue is not whether BOA can "average" out previous underpayment by later overpayment. Rather, BOA gives the following example:

> For example, if the Bank's calculation of overtime wages for one period resulted in a "net overpayment" of overtime to an employee for that period, then that overall overpayment "offsets" any purported dilution or underpayment *within that particular period's overtime calculation*. And because of that net overpayment for that period, the Bank never incurred liability for an underpayment.

BOA does not argue that it can "negate" underpayment from prior periods with overpayment in later periods. Instead, BOA argues that because of the varying facts

underlying the calculation, it is possible that employees could have been underpaid for sub-parts of a period but overpaid overall throughout the period. BOA does not argue that it can "negate" past underpayment with later overpayment, but that total overpayment "negates" underpayment *within* the same period. This feature of the policy—allowing employees to be ostensibly underpaid for part of a pay period without ultimately incurring harm—further complicates and individualizes the calculation needed to determine liability.

## IV

For the above reasons, we affirm the holding of the district court denying class certification.

**AFFIRMED.**