NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FEB 27 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JULIAN VARGAS, individually on behalf of themselves and all others similarly situated; AMERICAN COUNCIL OF THE BLIND, INC.,

        Plaintiffs – Appellees / Cross – Appellants,

  v.

QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.; QUEST DIAGNOSTICS HOLDINGS, INC.; QUEST DIAGNOSTICS INCORPORATED,

        Defendants – Appellants / Cross – Appellees.

Nos. 23-3189
      23-3436

D.C. No.
2:19-cv-08108-DMG-MRW

MEMORANDUM*

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Argued and Submitted February 4, 2025
Pasadena, California

Before: WARDLAW, CALLAHAN, and HURWITZ, Circuit Judges.

---

    * This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Defendants Quest Diagnostics Clinical Laboratories, Inc., Quest Diagnostics Holdings, Inc., and Quest Diagnostics Incorporated ("Quest") appeal the district court's: (1) judgment entered after a bench trial finding that the check-in process at Quest's blood and urine testing facilities violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182; (2) certification of an injunctive relief class under Federal Rule of Civil Procedure 23(b)(2); and (3) order granting injunctive relief. Plaintiffs Julian Vargas and the American Council for the Blind cross appeal, challenging the scope of the injunction and the district court's refusal to certify a Rule 23(b)(3) damages sub-class for claims under the California Unruh Civil Rights Act, Cal. Civ. Code § 51.

We have jurisdiction under 28 U.S.C. § 1291 and review the district court's conclusions of law de novo and findings of fact for clear error. *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 993 (9th Cir. 2020). Decisions about class certification are reviewed for abuse of discretion, *Castillo v. Bank of Am., NA*, 980 F.3d 723, 728 (9th Cir. 2020), as is the decision "to grant equitable relief under the ADA," *Molski v. Foley Ests. Vineyard & Winery*, 531 F.3d 1043, 1046 (9th Cir. 2008).

1.    The ADA requires public accommodations to "take reasonable steps to provide disabled guests with a like experience" comparable to that of able-bodied patrons. *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1135 (9th Cir. 2012)

(citing *Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 128–29 (2005)). To implement the statutory requirement, 42 U.S.C. § 12182, a Department of Justice regulation, 28 C.F.R. § 36.303(c)(1), requires public accommodations like Quest to provide "effective communication" to individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 36.303(c)(1)(ii).

Quest first argues that although the district court "recited the proper 'like experience' standard, it erroneously applied an identical experience standard, holding that Quest could satisfy the ADA's 'effective communication' requirement . . . only if Quest's phlebotomist assistance provided legally blind patients an identical ability to check in immediately, as sighted patients could using the original Kiosk." Quest's argument, which relies on the district court's occasional use of the word "immediately" in portions of its order, misses the essence of the district court's ruling. Rather than holding that Quest violated the ADA by failing to check in blind patients seeking its services "immediately," the court found that Quest failed to provide Vargas "any way of communicating" to a phlebotomist "that he had arrived at all," in contrast to sighted patients who could make their arrival known to phlebotomists promptly by using a kiosk. Nor did the court hold that Quest could only comply with the ADA by enabling blind patients to check in "immediately."

Rather, it said that a "reliable method of quickly and easily summoning a phlebotomist to provide assistance" would satisfy the ADA. Read as a whole, the district court's order appropriately applied the "like experience" standard.

2. Quest argues that the district court erred in not examining "the discriminatory impact of a facially-neutral policy on the class as a whole in order to determine whether there exists a classwide violation of law." We disagree.

"Rule 23(b)(2) enables a trial court to determine the appropriateness of system-wide relief based on the individual experiences of the named plaintiffs." *Armstrong v. Davis*, 275 F.3d 849, 871 (9th Cir. 2001). In granting class-wide injunctive relief, the district court considered the testimony of six class members who had visited seven different Quest patient service centers ("PSCs") and complaints Quest received from twenty-nine visually impaired individuals. Moreover, the district court was presented with evidence that blind patients could not use Quest's kiosks without assistance, employees were generally not present in the check-in area to provide that assistance during the check-in process, and there generally was no other way for blind patients to request assistance when there were no employees in the check-in area. This evidence, recounted in "the district court's extensive findings of fact setting forth in meticulous detail the injuries suffered" by

class members, supports class-wide injunctive relief. *Armstrong*, 275 F.3d at 871.[1]

3.      Quest next argues that it "mooted Plaintiffs' class ADA claims when it deployed the TFS [three-finger swipe] enhancement" to its kiosks.

"[A] defendant claiming that its voluntary compliance moots a case bears a formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). The district court did not err in finding that Quest did not meet this burden. The court was presented with substantial evidence that problems with the implementation of TFS did not enable class members to check in without difficulty. For example, an expert who visited twenty-four PSCs in which TFS had been installed reported various technical difficulties using TFS at all PSCs he visited; many of those difficulties prevented check-in.[2]

4.      Plaintiffs' cross-appeal contends the scope of injunctive relief was too limited. We hold that the district court reasonably tailored the scope of the injunctive

---

[1]      Quest's motion for judicial notice of other non-binding cases involving kioks involving different district court findings, **Dkt. 11**, is **granted**.

[2]      Quest also claims that the district court erred in excluding evidence that would have supported its argument that the case was moot. The district court's ruling—that Quest's belated disclosure of this evidence long after the close of fact discovery was neither substantially justified nor harmless, Fed. R. Civ. P. 37(c)—was not an abuse of discretion. *See Ollier v. Sweetwater Union High School Dist.*, 768 F.3d 843, 859-64 (9th Cir. 2014).

relief to effectively remedy the ADA violation by ordering Quest to establish and maintain a "reliable method of quickly and easily summoning a phlebotomist to provide assistance," without also requiring Quest to "adopt an entirely new Kiosk program." *See* 42 U.S.C. § 12188(a)(2) ("[I]njunctive relief shall . . . include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, *to the extent required* by this subchapter" (emphasis added)). Plaintiffs do not challenge the district court's conclusion that the ADA does not require Quest to provide kiosks that are "independently accessible" by blind persons, and, therefore, we need not address whether the district court erred in providing additional reasons for limiting the scope of its injunction or in admitting evidence that supported limiting the scope of the injunction. *Cf. E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1297 (9th Cir. 1992) (an injunction must be "tailored to eliminate only the specific harm alleged" and "[a]n overbroad injunction is an abuse of discretion").

5.     The district court did not abuse its discretion in declining to certify an Unruh Act statutory damages sub-class because it reasonably concluded that individualized damages inquiries would overcome common issues and that a class action was "not superior to other available methods for adjudicating the Unruh Act claim." *See* Fed. R. Civ. P. 23(b)(3).

Only a class member injured by the kiosk system has standing to seek Unruh

Act statutory damages. *See Angelucci v. Century Supper Club*, 41 Cal. 4th 160, 175 (2007). As the district court noted, some class members may have checked in without any difficulty notwithstanding the kiosk system, and therefore were not injured, because a staff member was available to assist them, or because they were assisted by a person who accompanied them to the PSC. Thus, the district court did not abuse its discretion in concluding that "a class action is not superior to other methods for adjudicating the Unruh Act claim" because "each class member would essentially need to litigate her own case even if the Unruh Act sub-class were certified."[3]

The district court did not, as Plaintiffs argue, hold that "the Unruh Act's $4,000 minimum statutory damages provision was per se inappropriate for class treatment on the basis that the $4,000 penalty provides a sufficient economic incentive to render thousands of individual actions superior to a single class action." Rather, the court correctly noted that "[t]he prime issue under the superiority analysis is whether each class member should be required to litigate his or her own

---

[3] The Supreme Court has granted certiorari in another kiosk accessibility class action, *Lab'y Corp. of Am. v. Davis*, No. 22-55873, 2024 WL 489288 (9th Cir. Feb. 8, 2024), *cert. granted*, No. 24-304, 2025 WL 288305 (U.S. Jan. 24, 2025). The sole question presented in that case is "[w]hether a federal court may certify a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) when some members of the proposed class lack any Article III injury." *Id.* Because we affirm the district court's decision not to certify a Rule 23(b)(3) class, the outcome of this case will not be affected by the Supreme Court's disposition of *Davis*.

case" and determined that "individualized issues [of injury under the Unruh Act] render a California sub-class unmanageable." The district court therefore did not abuse its discretion in concluding that individualized damages inquiries would overcome common issues and that a class action was not superior to other methods for adjudicating the controversy.

**AFFIRMED.**