Filed 12/17/24  Ramirez v. Southern California Pizza Company CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| ALEJANDRO RAMIREZ et al., | |
| Plaintiffs and Appellants, | G062245 |
| v. | (Super. Ct. No. JCCP 4725) |
| SOUTHERN CALIFORNIA PIZZA COMPANY, LLC, | ORDER MODIFYING OPINION; AND DENYING PETITION FOR REHEARING; NO CHANGE IN JUDGMENT |
| Defendant and Respondent. | |

It is ordered that the opinion filed herein on November 22, 2024, be modified as follows:

1.  On page 1, delete the semicolon and the phrase "appeal from order granting motion to compel arbitration dismissed" following "remanded" from the first full paragraph.

2.  On page 3, the first full paragraph is amended to read as follows: For the reasons detailed below, we affirm with one exception. When the trial court limited the time period for the rest break cause of action, it also dismissed a cause of action for a waiting time claim on the ground that claim was "entirely derivative of the rest break claim."

The California Supreme Court subsequently rejected that premise. We therefore reverse the order dismissing the waiting time claim but express no opinion as to whether it has merit or is time-barred, in whole or in part.

3. On page 39, delete the second sentence of the last full paragraph ("The appeal from the order granting the motion to compel arbitration is dismissed.").

There is no change in the judgment.

Plaintiffs and appellants Alejandro Ramirez et al.'s petition for rehearing filed December 9, 2024, and defendant and respondent Southern California Pizza Company, LLC's petition for rehearing also filed December 9, 2024, are DENIED.


GOODING, J.

WE CONCUR:


MOORE, ACTING P. J.


MOTOIKE, J.

2

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ALEJANDRO RAMIREZ et al., | |
| Plaintiffs and Appellants, | G062245 |
| v. | (Super. Ct. No. JCCP 4725) |
| SOUTHERN CALIFORNIA PIZZA COMPANY, LLC, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, William D. Claster, Judge. Affirmed in part, reversed in part, and remanded; appeal from order granting motion to compel arbitration dismissed.

Capstone Law, Ryan H. Wu, Melissa Grant and Tyler Anderson for Plaintiffs and Appellants.

Keller Grover, Eric A. Grover; Finkelstein, Blankinship, Frei-Pearson & Garber, Jeremiah Frei-Pearson and Bradley F. Silverman for Plaintiff and Appellant Carolina Huerta.

Law Offices of Ramin R. Younessi, Ramin R. Younessi and Jason J. Buccat for Plaintiff and Appellant Rene Najarro.

Matern Law Group, Matthew Matern and Matthew Gordon for Plaintiff and Appellant Elena Cassiano Falero.

Bitton & Associates and Ophir Bitton for Plaintiff and Appellant Kevin Deanda.

Barrera & Associates, Patricio T.D. Barrera; Davenport Law and Ashley Davenport for Plaintiff and Appellant Morgan Gregory.

Seyfarth Shaw, Jon D. Meer, Leo Q. Li and Justin J. Jackson for Defendant and Respondent.

\*          \*          \*

Multiple lawsuits in different counties were filed against Southern California Pizza Company, LLC (SoCal Pizza) by its employees for various wage and hour claims. The Judicial Council ordered many of the cases coordinated and assigned the proceedings to the trial court. This appeal challenges the court's rulings in the coordinated proceeding (1) denying class certification of a claim that SoCal Pizza's drivers were not fully reimbursed for their expenses when they used their own vehicles to deliver pizzas, (2) denying class certification of a claim that SoCal Pizza improperly calculated overtime pay, therefore undercompensating employees, (3) limiting the period for which a class of employees could recover for rest break violations and dismissing the related waiting time penalty claim, and (4) ordering to arbitration the individual claim of the new class representative of a Fair Labor Standards Act (FLSA) claim.

2

For the reasons detailed below, we affirm with two exceptions. First, when the trial court limited the time period for the rest break cause of action, it also dismissed a cause of action for a waiting time claim on the ground that claim was "entirely derivative of the rest break claim." The California Supreme Court subsequently rejected that premise. We therefore reverse the order dismissing the waiting time claim but express no opinion as to whether it has merit or is time-barred, in whole or in part. Second, we conclude the court's order granting the motion to compel arbitration is not appealable, and the appeal of that order must therefore be dismissed.

FACTUAL AND PROCEDURAL BACKGROUND[1]

I.

THE PARTIES

Defendant SoCal Pizza is a franchisee of Pizza Hut of America and operates more than 200 stores in Southern California. Plaintiffs are employees of SoCal Pizza. The following cases are part of the coordinated proceeding:

1. *Alejandro Ramirez v. Southern California Pizza Company, LLC*, case No. BC470642 (Ramirez Action), originally filed by plaintiff Demetrio Hernandez in Los Angeles County Superior Court on September 30, 2011; Ramirez was substituted in as the lead plaintiff on January 16, 2014;

2. *Carolina Huerta v. Southern California Pizza Company, LLC*, case No. BC516989, filed August 1, 2013 in Los Angeles County Superior Court;

---

[1] Given the exceptionally long and detailed history of the cases underlying the present complaint, we will limit the background section of this opinion to those matters and issues before us on appeal.

3

3. *Uriel Hernandez v. Southern California Pizza Company, LLC*, case No. BC544871 (Hernandez Action), filed May 7, 2014 in Los Angeles County Superior Court;

4. *Ibrahim Tascic v. Southern California Pizza Company, LLC*, case No. RIC 1406622, filed July 3, 2014 in Riverside County Superior Court;

5. *Morgan Gregory v. Southern California Pizza Company, LLC*, case No. BC557320, filed September 11, 2014 in Los Angeles County Superior Court;

6. *Lourdes Banas, Dong Nguyen, and Sarkis Everekyan v. Southern California Pizza Company, LLC*, case No. BC563801, filed November 14, 2014, in Los Angeles County Superior Court;

7. *Rene Najarro v. Southern California Pizza Company, LLC*, case No. BC634946, filed September 22, 2016 in Los Angeles County Superior Court;

8. *Elena Cassiano Falero v. Southern California Pizza Company, LLC*, case No. BC657077 (Falero Action), filed April 10, 2017 in Los Angeles County Superior Court; and

9. *Kevin Deanda v. Southern California Pizza Company, LLC*, case No. BC672995, filed August 18, 2017 in Los Angeles County Superior Court.[2]

---

[2] Other cases filed against SoCal Pizza that are not part of the coordinated proceeding include: *Moises Ramirez v. Southern California Pizza Company, LLC*, case No. 30-2009-00327365, filed December 3, 2009 in Orange County Superior Court; and *Eric Levonian v. Southern California Pizza Company, LLC*, case No. 56-2011-00403818, filed September 9, 2011 in Ventura County Superior Court.

Plaintiffs filed a consolidated complaint in the coordinated proceeding on May 8, 2018. The consolidated complaint was amended twice; the second amended consolidated complaint is the operative complaint.

## II.

### TRIAL COURT DENIES PLAINTIFFS' MOTION FOR CLASS CERTIFICATION FOR DELIVERY DRIVERS BASED ON PER DELIVERY REIMBURSEMENT FEE

In March 2016, plaintiffs in the Ramirez Action moved to certify a class of pizza delivery drivers, arguing the use of a flat, per delivery reimbursement policy had under-reimbursed the drivers. The trial court denied that motion based on lack of commonality, the predominance of individual issues, and the lack of a uniform policy. In December 2020 (after consolidation), plaintiffs again moved for class certification on the delivery driver reimbursement claim. The trial court found collateral estoppel did not bar a new motion for class certification, but it again denied the motion "[b]ecause liability would turn on a series of individualized inquiries."

## III.

### TRIAL COURT DENIES PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AS TO OVERTIME WAGES

In August 2020, plaintiffs filed a motion to certify classes of employees who were not properly paid overtime wages and meal and rest period premiums. Plaintiffs alleged SoCal Pizza had undercalculated overtime pay and premium pay for employees who worked different positions at different hourly pay rates during the same workweek. In March 2021, the trial court denied the motion as to the rate classes because it found issues of individualized proof made the claim unsuited to class treatment.

## IV.

TRIAL COURT GRANTS CLASS CERTIFICATION AS TO REST BREAK CLAIMS AND WAITING TIME PENALTY CLAIMS, BUT LATER GRANTS JUDGMENT ON THE PLEADINGS AS TO CLAIMS ARISING BEFORE MAY 7, 2010 DUE TO FOUR-YEAR STATUTE OF LIMITATIONS AND DISMISSES THE WAITING TIME PENALTY CLAIMS

Plaintiffs filed a class certification motion based on the denial of the right to leave the premises for rest breaks, with plaintiff Falero to be appointed as the class representative. Plaintiffs alleged SoCal Pizza had a written policy, in violation of California law, that employees could not leave the premises during rest breaks without obtaining permission to do so from their supervisor. Plaintiffs also sought certification of a class based on derivative waiting time penalty claims. The trial court granted the motion.

In May 2021, SoCal Pizza moved for judgment on the pleadings of the rest break claim. SoCal Pizza argued the statute of limitations barred any claims that had accrued before May 7, 2010. Although the Ramirez Action contained a rest break claim and was filed September 30, 2011, that claim was summarily adjudicated against Ramirez in June 2015, before the consolidated complaint was filed. The earliest filed case with a rest break claim that was not summarily adjudicated was the Hernandez Action, filed May 7, 2014. The Falero Action was not filed until almost three years later, in April 2017. The trial court found neither the relation back doctrine nor principles of tolling applied and granted the motion for judgment on the pleadings.

In the same order, the trial court found the waiting time penalty claim was "entirely derivative of the rest break claim" and dismissed that claim. The court based its order on the appellate court decisions in *Naranjo v. Spectrum Security Services, Inc.* (2019) 40 Cal.App.5th 444, reversed in part

6

and remanded, *Naranjo v. Spectrum Security Services, Inc.*, 13 Cal.5th 93, and *Betancourt v. OS Restaurant Services, LLC* (2020) 49 Cal.App.5th 240 (nonpub. opn.), transferred with directions to vacate and reconsider, S262866, June 29, 2022, 2022 Cal. Lexis 3536.[3]

V.

TRIAL COURT ORDERS NEWLY-NAMED CLASS REPRESENTATIVE ON WAGE STATEMENT CLAIMS TO ARBITRATION

The parties reached a settlement of some, but not all, of the FLSA wage statement claims asserted in the Ramirez Action.[4] Stanford Midling was part of the class of plaintiffs whose claims were resolved by the partial settlement. The trial court granted preliminary approval of the partial settlement in June 2018, after which class notice was sent out. In March 2019, the trial court granted final approval of the partial FLSA class settlement.[5]

The FLSA wage statement claims not resolved by the settlement were included in the first amended consolidated complaint, filed November 30, 2018; Claudio Raigoza was the named plaintiff for those claims. Raigoza

---

[3] At the time the trial court issued its order, both cases were on review before the California Supreme Court.

[4] Alejandro Ramirez, the named plaintiff in the Ramirez Action, had not signed an arbitration agreement with SoCal Pizza.

[5] This settlement addressed plaintiffs' claim that SoCal Pizza violated Labor Code section 226, subdivision (a)(8) by failing to list its full registered name and address on employee wage statements. Apparently, the wage statements identified the employer as "'Southern California Pizza'" rather than "'Southern California Pizza Company, LLC.'" The FLSA claims at issue in this appeal address whether members of the plaintiff class were paid minimum wage for the time they spent "'on the road'" delivering pizzas.

had agreed to arbitration as part of her employment agreement, and SoCal Pizza moved to compel Raigoza's individual claims to arbitration on December 19, 2018. The court did not order arbitration at that time "pending the resolution or determination of such issues which may make arbitration unnecessary."

On October 25, 2019, plaintiffs filed a second amended consolidated complaint substituting Midling for Raigoza as the named plaintiff on the remaining FLSA wage statement claims. Three days later, SoCal Pizza filed a motion to compel arbitration of Midling's individual FLSA claims. The trial court granted the motion to compel arbitration, finding that because Midling was not a named plaintiff before October 25, 2019, SoCal Pizza's litigation conduct did not waive its right to compel arbitration of Midling's individual claims.

VI.

THE PARTIES STIPULATE TO SUMMARY ADJUDICATION OF ALL REMAINING CLASS, REPRESENTATIVE, AND PAGA CLAIMS TO FACILITATE THIS APPEAL

The parties then stipulated to summary adjudication of all remaining class, representative, and PAGA[6] claims. The court entered the order on the stipulation as a judgment on December 8, 2022. As relevant to this appeal, the stipulated order reads as follows: "1. Summary adjudication is hereby entered in favor of Defendant and against Plaintiffs, individually on behalf of themselves, as well as the 'aggrieved employees' and the Labor and Workforce Development Agency ('LWDA') represented by Plaintiffs in this consolidated action, as to the Tenth Cause of Action for violation of PAGA.

---

[6] The Labor Code Private Attorneys General Act of 2004. (Lab. Code, § 2698 et seq.)

8

Given that both the putative class action claims have been denied class certification, and that the representative action claims under PAGA have either been dismissed or adjudicated by the Court, only Plaintiffs' individual claims remain in this consolidated action. [¶] 2. This Order constitutes an appealable judgment under the death knell doctrine, permitting the Parties to appeal all adverse interlocutory orders. [¶] 3. In the event that Plaintiffs file an appeal under the death knell doctrine, Plaintiffs' remaining individual claims shall be stayed until the final resolution of the appeal, pursuant to the Amended Joint Stipulation." (Some capitalization and boldface omitted.) This appeal followed.

DISCUSSION

I.

DENIAL OF CLASS CERTIFICATION FOR DELIVERY DRIVERS BASED ON PER DELIVERY REIMBURSEMENT FEE

*A. Standard of Review*

"Under Code of Civil Procedure section 382, a class action is permitted 'when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . .' Class certification requires both an ascertainable class and a well-defined community of interest among class members." (*Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 575 (*Gattuso*).) "'The "community of interest" requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.'" (*Ibid.*)

Orders regarding class certification are reviewed for abuse of discretion. ""Because trial courts are ideally situated to evaluate the

9

efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification. . . . [Accordingly,] a trial court ruling supported by substantial evidence generally will not be disturbed 'unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made . . . .'"'" (*Imperial County Sheriff's Assn. v. County of Imperial* (2023) 87 Cal.App.5th 898, 911.) "A trial court's decision is an abuse of discretion if it is based on an error of law." (*Deck v. Developers Investment Co., Inc.* (2023) 89 Cal.App.5th 808, 824.)

"Orders denying class certification are reviewed differently by appellate courts than many other types of orders and judgments. 'Under ordinary appellate review, we do not address the trial court's reasoning and consider only whether the result was correct. [Citation.] But when denying class certification, the trial court must state its reasons, and we must review those reasons for correctness. [Citation.] We may only consider the reasons stated by the trial court and must ignore any unexpressed reason that might support the ruling. [Citations.] [¶] We will affirm an order denying class certification if any of the trial court's stated reasons was valid and sufficient to justify the order, and it is supported by substantial evidence. [Citations.] We will reverse an order denying class certification if the trial court used improper criteria or made erroneous legal assumptions, even if substantial evidence supported the order.'" (*Peviani v. Arbors at California Oaks Property Owner, LLC* (2021) 62 Cal.App.5th 874, 887.)

B. *California Law Regarding Mileage Reimbursement*

Labor Code section 2802 provides, in relevant part: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer . . . ." (*Id.*,

subd. (a); see *Oliver v. Konica Minolta Business Solutions U.S.A., Inc.* (2020) 51 Cal.App.5th 1, 30–31.) This includes costs incurred by an employee using their own vehicle for the employer's business, such as making deliveries. (*Gattuso, supra*, 42 Cal.4th at pp. 563–564.) "[T]o demonstrate that an employer has violated [section] 2802, a plaintiff must show that: (1) he or she is an employee; (2) he or she incurred necessary expenses either in the discharge of his or her duties or in obeying the employer's directions; and (3) the employer failed to reimburse the plaintiff for such expenses." (*Desimone v. Allstate Ins. Co.* (N.D.Cal., Sept. 14, 1999, No. C 96-cv-03606 CW) 1999 U.S.Dist. Lexis 20059, p. *19.)

There are at least three methods by which the employer may calculate the appropriate reimbursement for an employee's driving expenses: (1) the actual expense method; (2) the mileage reimbursement method; and (3) the lump sum method. (*Gattuso, supra*, 42 Cal.4th at pp. 568–571.) The actual expense method requires the employee to maintain "detailed and accurate records" of "fuel, maintenance, repairs, insurance, registration, and depreciation." (*Id.* at p. 568.) The employee must also calculate the total mileage driven for business and personal use and submit all this information to the employer. (*Ibid.*) The employer then exercises its judgment as to whether the employee's expenses were reasonable and reimburses the employee for reasonable, business-related expenses. (*Ibid.*)

The mileage reimbursement method requires the employee to maintain a record of the number of miles driven for business-related duties. (*Gattuso, supra*, 42 Cal.4th at p. 569.) The employer multiplies the business-related miles by a predetermined amount to calculate the reimbursement for the employee. (*Ibid.*) The Internal Revenue Service (IRS) has calculated a

11

mileage rate that applies for federal tax purposes and may be used for reimbursement under Labor Code section 2802. (*Gattuso, supra*, at p. 569.)

Under the lump-sum payment method, the employer "pays a fixed amount" to cover the employee's automobile expenses. (*Gattuso, supra*, 42 Cal.4th at p. 570.)

Whichever method is used must result "in full reimbursement for actual expenses necessarily incurred by the employee." (*Gattuso, supra*, 42 Cal.4th at p. 570.) "If the employee can show that the reimbursement amount that the employer has paid is less than the actual expenses that the employee has necessarily incurred for work-required automobile use (as calculated using the actual expense method), the employer must make up the difference." (*Id.* at p. 569.)[7]

*C. The Motion for Class Certification*

Plaintiffs' second cause of action in the second amended consolidated complaint alleges SoCal Pizza violated Labor Code section 2802 by failing to fully reimburse plaintiffs for their expenses incurred in delivering pizzas. In December 2020, plaintiffs moved to certify a class of "All current and past employees of defendant Southern California Pizza Company, LLC, regardless of title, that worked as, or performed the duties of, a delivery driver in the State of California at any time from August 1, 2009 to the present," for which plaintiffs Huerta, Tascic, and Falero would be class representatives.

The trial court denied the motion for class certification because individual issues would predominate over class issues. Specifically, the court

[7] *Gattuso* did not consider whether class certification was appropriate for a claim that the employee drivers had not been fully reimbursed for their driving expenses; instead, the court remanded the issue.

12

found that to succeed on their claims, plaintiffs would have to prove the class members' actual expenses were greater than the lump sum paid.[8] Therefore, "Proof would hinge on numerous individualized inquiries, such as the age and condition of each class member's car; his or her gasoline, maintenance, and insurance costs (and the portion of each properly attributed to work-related driving); the number of miles he or she drove; and the number of deliveries he or she made, including whether multiple deliveries were made to the same location."

*D. Analysis*

Class certification is not appropriate on a Labor Code section 2802 claim where the challenge to the defendant employer's reimbursement method would require the plaintiff employees to show their actual individualized expenses. "That showing would require myriad answers to individualized questions for each class member, including what make and vintage of vehicle was used, whether it was financed or leased and, if so, at what cost, and what kind of fuel was used. Analysis of actual expenses is not appropriate for class treatment because it would not present issues common to the class." (*Ortiz v. CVS Caremark Corp.* (N.D.Cal., Dec. 2, 2013, No. C-12-05859 EDL) 2013 U.S.Dist. Lexis 169854 at p. *42; *Id.* at p. *43 (*Ortiz*) [denying class certification motion under Federal Rules of Civil Procedure, rule 23 (28 U.S.C.) due to lack of commonality; employer had used mileage reimbursement method, so comparison to actual expenses was required to challenge the amount paid under Lab. Code, § 2802].)

---

[8] The trial court's minute order contains a typographical error that plaintiffs were required to establish that "actual expenses were indeed less than the lump sums paid." Neither party contends there is any confusion as to the meaning or effect of the court's order.

13

Here, plaintiffs argue that *Gattuso* allows them to challenge the lump sum reimbursement by comparison to the IRS's mileage reimbursement rate, meaning proof would not hinge on the complicated collection of facts used in the actual expenses calculation. "Of course, an employee must be permitted to challenge the amount of a lump-sum payment as being insufficient under [Labor Code] section 2802. An employee may do so by comparing the payment with the amount that would be payable under either the actual expense method or the mileage reimbursement method." (*Gattuso, supra*, 42 Cal.4th at p. 571.)

Plaintiffs' argument misconstrues the holding of *Gattuso*. The ultimate question in a case under Labor Code section 2802 is whether the employees were fully reimbursed. *Gattuso* concludes "section 2802 requires only that whatever method is used result in full reimbursement for actual expenses necessarily incurred by the employee." (*Gattuso, supra*, 42 Cal.4th at p. 570.) The employees' actual expenses are relevant and necessary regardless of the reimbursement method the employer uses. Reimbursement is inadequate under Labor Code section 2802 only if it is "less than the actual expenses that the employee has necessarily incurred for work-required automobile use (as calculated using the actual expense method)." (*Gattuso, supra*, at p. 569.)

Further, SoCal Pizza must be allowed to litigate whether its per delivery payments were sufficient to reimburse individual class members. Although it will bear the burden of proof on that point, it remains plaintiffs' obligation at the class certification stage of the proceedings to demonstrate that common issues nevertheless predominate and that individualized issues can be managed effectively in the class context. (See *Duran v. U.S. Bank National Assn.* (2014) 59 Cal.4th 1, 35 [where defense to liability presents

14

individualized issues, the plaintiff must demonstrate class treatment is nevertheless appropriate].)

SoCal Pizza paid all delivery drivers a flat reimbursement fee between $0.85 and $1.07 per delivery during the relevant period. Plaintiffs' expert witness calculated that during the period of 2009 through 2020, the flat reimbursement fee resulted in a mileage reimbursement of between $0.216 and $0.260 per mile, based on each delivery being four miles roundtrip. The IRS vehicle mileage reimbursement rate during that period ranged between $0.50 and $0.580 per mile. This cause of action seeks to recover the difference between the per mile calculation of the flat reimbursement fee paid to the delivery drivers and the IRS payment mileage reimbursement rate.

The trial court explained why issues of individualized proof would prevail: "[T]o the extent Plaintiff alleges that Defendant's formula for calculating the lump sum payment is uniform and therefore can be tested against the IRS payment rate, individualized inquiries will still predominate. Because a mileage rate, including the IRS rate, 'is merely an approximation of actual expenses, the mileage reimbursement method is inherently less accurate than the actual expense method. . . . If the employee can show that the reimbursement amount that the employer has paid is less than the actual expenses that the employee has necessarily incurred for work-required automobile use (as calculated using the actual expense method), the employer must make up the difference.' (Citation.) It necessarily follows that if the employer can show the lump sum rate fully reimburses the employee— notwithstanding the fact that the lump sum rate is less than the IRS rate— then the employer is not obligated to make up the difference."

15

In opposition to the class certification motion, SoCal Pizza explained that it uses a per delivery reimbursement rather than a mileage reimbursement for its delivery drivers because (1) mileage reimbursement might encourage employees to take a longer route, in contravention of SoCal Pizza's customer service goal of delivering pizzas as quickly as possible; (2) mileage reimbursement creates a burden for delivery drivers who must provide detailed records of the actual miles driven for every delivery; and (3) mileage reimbursement creates additional work for SoCal Pizza to review and verify all reimbursement requests. SoCal Pizza pays each driver a lump sum for every delivery in cash at the end of their shift. The amount of the per delivery lump sum was the result of analysis performed by an outside consulting firm and accounts for the costs of "gasoline, liability insurance, depreciation of the value of the vehicle, and routine maintenance or repair." SoCal Pizza makes adjustments to the lump sum generated by the outside firm's analysis based on the price of gasoline. Employees may also make individual requests for additional reimbursement if their actual expenses for any particular delivery are greater than the lump sum.[9]

Plaintiffs' expert converted the lump sum payments into per mile rates in order to compare them with the IRS's mileage reimbursement rates. The expert assumed each delivery was a four-mile round trip, and concluded the lump sum reimbursements were significantly below the IRS rate. But if a delivery was a two-mile round trip, the difference would be significantly less

---

[9] The existence of a policy by which drivers could seek additional reimbursement payments if the lump sum payments did not fully reimburse them does not alone support denial of class certification. (See *Ortiz, supra*, 2013 U.S.Dist. Lexis 169854 at p. *9 [one of the named plaintiffs did not seek reimbursement for deliveries occurring during her shift].)

and in some cases would provide more to the employee than the IRS rate. Plaintiffs' expert admitted many of SoCal Pizza's stores were located in densely populated areas in order to be very close to the customer base, meaning the "vast majority" of the deliveries would potentially be less than half a mile. If the round trip delivery was one mile or less, the employee would, in most cases, be reimbursed more under the lump sum payment than if the IRS mileage rate were used. SoCal Pizza offered evidence from numerous current and former employees that the majority of their deliveries were less than a mile from their respective stores, and a significant number were less than half a mile away. Additionally, many deliveries were made on foot or by bicycle, without having to drive, and the employee still received the lump sum reimbursement. SoCal Pizza offered evidence that in one month— May 2010—the average per delivery reimbursement by store was as high as $2.24 and was not lower than $0.98.

To determine whether the lump sum payment results in reimbursement that is less than the IRS mileage rate, the exact mileage for each delivery is necessary. If no miles were actually driven (because the pizza was delivered by walking or biking) or multiple deliveries were made to a single location at one time, the lump sum would result in a larger reimbursement than the IRS mileage calculation. Therefore, the trial court did not abuse its discretion in determining proof of individual issues would outweigh class-wide issues.

Plaintiffs rely on *Espejo v. The Copley Press, Inc.* (2017) 13 Cal.App.5th 329 (*Espejo*) to argue a class may be certified even though they cannot establish the amount of any particular pizza driver's damages. In *Espejo*, the defendant company had argued the trial court's award under Labor Code section 2802 was "flawed because the proof of the mileage driven

17

by the carriers is 'impossibly individualized' and plaintiffs did not account for the gas and service incentives and credits that [the defendant] provided to the carriers." (*Espejo, supra,* at p. 370.) The appellate court, however, held, "'"Uncertainty of the *fact* of whether any damages were sustained is fatal to recovery, but uncertainty as to the *amount* is not."'" (*Id.* at p. 371.) The trial court in the present case distinguished *Espejo* because liability in *Espejo* was automatic. The class members in *Espejo* had been classified as independent contractors rather than employees, and the employer had failed to reimburse *any* driving expenses. The only issue to be decided, therefore, was how much each employee should receive in damages. In the present case, the issue of liability must first be determined; only then will the amount of damages be determined.

II.

DENIAL OF CLASS CERTIFICATION FOR EMPLOYEES RECEIVING OVERTIME OR MEAL OR REST PERIOD PREMIUMS WHEN THEY RECEIVE DIFFERENT HOURLY PAY RATES DURING THE SAME WORKWEEK

*A. Relevant Law*

California requires that employers pay their non-exempt employees overtime based on hours worked per day, per week, and for continuous days. "Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." (Lab. Code, § 510, subd. (a).)

"Where two rates of pay are paid during a workweek, the California method for determining the regular rate of pay for calculating overtime in that workweek mirrors the federal method, based upon the

weighted average of all hourly rates paid. [Citation.] Initially, therefore, it must be predicated upon the finding that there are established hourly rates being paid. The rate will be established by adding all hours worked in the week and dividing that number into the total compensation for the week." (Cal. Dept. of Labor, Div. of Labor Standards Enforcement, Enforcement Policies and Interpretations Manual (rev. 2002) § 49.2.5, p. 49-10.)

"If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." (Lab. Code, § 226.7, subd. (c).) The phrase "'regular rate of compensation'" under section 226.7, subdivision (c) has the same meaning as "'regular rate of pay'" under section 510, subdivision (a). (*Ferra v. Loews Hollywood Hotel, LLC* (2021) 11 Cal.5th 858, 863.)

*B. The Motion for Class Certification*

Some SoCal Pizza employees received different hourly pay rates in the same work week because they worked in more than one position. Before September 30, 2014, if those employees worked overtime, the rate of pay for their overtime hours was determined by the "rate in effect" method, meaning that overtime pay was calculated at 1.5 times the pay rate when the overtime work began.[10] On September 30, 2014, SoCal Pizza began calculating the regular rate of pay based on the weighted average of regular

---

[10] The trial court gave the following example: "For example, if an employee worked 9 hours as a driver on Monday and 9 hours as a shift manager on Tuesday, she would be paid Monday's overtime at 1.5 times the regular hourly rate for drivers and Tuesday's overtime at 1.5 times the regular hourly rate for shift managers."

hourly rates paid in biweekly pay periods.[11] Plaintiffs contend both of these methods of calculating overtime pay violated California law.

Plaintiffs sought to certify a class of: "All persons [who] worked as non-exempt employees of [SoCal Pizza] in California at any time from September 30, 2007 until the date of the order granting class certification, who were paid two or more hourly rates during at least one workweek in which they also were paid overtime wages." The trial court found the overtime claim was not amenable to class certification because, under either overtime plan, "the injury determination must be made on an employee-by-employee, week-by-week basis. Employees' hours of work, hourly rates, and positions differ throughout the class period. As a result, liability becomes a series of individualized, week-by-week calculations for thousands of employees—exactly the sort of thing not amenable to class treatment."

Plaintiffs also sought to certify a class of SoCal Pizza employees who were entitled to rest period or meal period premium pay, the rate of which was also potentially miscalculated because they worked two different jobs with two different rates during a given week. That proposed class was defined as: "All persons who worked as non-exempt employees of [SoCal Pizza] in California at any time from September 30, 2007 until the date of the

---

[11] The trial court offered the following as an example of this method of calculating overtime, taken from the parties' briefs: "For example, during the pay period of September 30, 2014 [to] October 13, 2014, Plaintiff Falero worked 28.9839 hours (no overtime hours worked) as [a] non-managerial employee at the rate of $9 per hour. During the same period, Plaintiff Falero also worked 45.0346 hours (including 44.9121 regular hours and 0.1225 overtime hours) as [a] managerial employee at the rate of $11.41 per hour. The overtime rate of $15.6996 was calculated based on 1.5 times the average of all earnings at the regular hourly rate: ($9 x 28.9839 hours + $11.41 x 45.0346) / (28.9839 hours + 45.0346 hours) x 1.5."

20

order granting class certification, who were paid two or more hourly rates during at least one workweek in which they also were paid a meal period penalty and/or rest period penalty."

The trial court denied the motion for class certification as to this putative class for the same reasons as the overtime class. Thus, our analysis of the overtime class applies equally to the rest and meal break premium pay class. As we explain below, we agree with the trial court's reasoning and conclusion as to both proposed classes.

*C. Analysis*

In denying certification of both the overtime and rest/meal period classes, the trial court cited *Castillo v. Bank of America, NA* (9th Cir. 2020) 980 F.3d 723 (*Castillo*) in support of its ruling. In *Castillo*, the defendant employer allegedly violated Labor Code section 510 in calculating its employees' overtime. (*Castillo, supra*, at p. 726.) The plaintiff sought to represent a class of employees who did not receive the correct amount of overtime pay. (*Ibid.*) The district court found that although the plaintiff had established commonality and typicality, she had failed to establish predominance. Specifically, the court found "a large portion of the proposed class" (*id.* at p. 731) did not work overtime or were not underpaid and therefore were not injured. If many class members will have no claim for relief because they could not have been injured by the defendant's conduct, class certification is improper. (*Id.* at pp. 730–731; see *Moore v. Apple Inc.* (N.D.Cal. 2015) 309 F.R.D. 532, 542–543 [class cannot be certified because it "necessarily includes individuals who could not have been injured by Defendant's alleged wrongful conduct as a matter of law"].)

Plaintiffs argue *Castillo* is inapposite because the proposed class in that case consisted of every employee who worked during the class period,

which included many employees who "were never exposed to the challenged [overtime] policy." By contrast, plaintiffs contend the proposed class in the present case was narrowly drawn.

We are not persuaded by plaintiffs' effort to distinguish *Castillo*. A large number of potential class members might not have suffered any injury, despite the fact they were subject to SoCal Pizza's overtime policies. For instance, they may not have worked overtime in two different pay classes. Under the first overtime system, their overtime might have started with the higher base salary and thus they would have received *more* than they would have under the correct calculation. Under the second system, they might have obtained the same result with a two-week calculation versus a one-week calculation. "[A]llowing employees to be ostensibly underpaid for part of a pay period without ultimately incurring harm—further complicates and individualizes the calculation needed to determine liability." (*Castillo, supra*, 980 F.3d at p. 733.) As the trial court noted, "even if aspects of Defendants' overtime scheme are illegal, the injury determination must be made on an employee-by-employee, week-by-week basis. Employees' hours of work, hourly rates, and positions differ throughout the class period. As a result, liability becomes a series of individualized, week-by-week calculations for thousands of employees—exactly the sort of thing not amenable to class treatment."

Plaintiffs argue the trial court erred by failing to differentiate between the *fact* of damage and the *amount* of damage. "'As a general rule if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages.'" (*Brinker Restaurant Corporation v. Superior Court* (2012) 53 Cal.4th 1004, 1021-1022 (*Brinker*).) Here, Plaintiffs offered proof

22

that under both of the illegal overtime calculation methods, putative class representative Falero was harmed. Under the rate in effect method, Falero earned $0.77 less than if the weighted average method had been used. For a different pay period, the evidence showed Falero earned $3.03 less in overtime pay based on the use of the weighted average for the biweekly pay period than she would have earned using the weighted average for the weekly pay period. Plaintiffs failed to show any harm to any employee other than Falero. Plaintiffs contend the showing that Falero was injured by the use of an unlawful rate of pay policy is sufficient to support class certification. (See *Evans v. Wal-Mart Stores, Inc.* (C.D.Cal., Nov. 25, 2019, No. CV 17-07641-AB) 2019 U.S.Dist. Lexis 221957 at pp. *16–*17 [court certified class of employees with unpaid overtime claims based on review of single employee's time records and evidence that employer automatically calculated all employees' rates of pay]; *Tapia v. Zale Del., Inc.* (S.D.Cal., Apr. 6, 2016, No. 13-CV-1565-BAS (PCL)) 2016 U.S.Dist. Lexis 48046 at pp. *7–*8 [using one employee's payroll records was sufficient to grant class certification when employer had uniform payroll policy and procedure].)[12]

---

[12] The plaintiffs also cite *Prado v. Warehouse Demo Servs.* (C.D.Cal., Jan. 21, 2015, No. CV 14-3170-JFW (Ex)) 2015 U.S.Dist. Lexis 187008. *Prado* involved a motion for conditional certification under section 216 of title 29 of the United States Code. The court applies a "'fairly lenient'" standard when granting conditional certification. (*Hubbard v. Cnty. of Los Angeles* (C.D.Cal., Oct. 23, 2023, No. CV 23-3541 PA (RAOx)) 2023 U.S.Dist. Lexis 240636 at p. *4.) Then, after the potential class members have had an opportunity to opt in, the court considers a motion to decertify the class, which involves a "'more stringent inquiry into the propriety and scope of the collective action.'" (*Id.* at p. *5.) Given its very different procedural context, we do not rely on *Prado* in deciding this appeal.

SoCal Pizza argues the trial court correctly denied the motion because plaintiffs failed to establish a "classwide harm of underpayment."[13] "[A] class plaintiff's theory of common proof must be more than wishful thinking; it must have a foundation in the evidence. . . . [Citation.] [P]laintiffs 'may not simply allege' a uniform policy or practice, but must 'present substantial evidence that proving both the existence of the defendant's uniform policy or practice and the alleged illegal effects of that policy or practice could be accomplished efficiently and manageably within a class setting.'" (*Payton v. CSI Electrical Contractors, Inc.* (2018) 27 Cal.App.5th 832, 842.) Given the potentially large number of class members who suffered no injury, we conclude the trial court did not abuse its discretion by denying the motion for class certification.

Plaintiffs argue that if SoCal Pizza's overtime policy was unlawful, then SoCal Pizza is liable to every class member. Plaintiffs cite *Faulkinbury v. Boyd & Associates, Inc.* (2013) 216 Cal.App.4th 220 (*Faulkinbury*), and *Employment Development Dept. v. Superior Court* (1981) 30 Cal.3d 256 (*Employment Development*) for the proposition that class certification is not barred even if individual class members must show both eligibility for recovery and damages. *Faulkinbury*, however, involved a uniform policy as to which "the overtime rate of pay can be decided on a

_____

[13] This does not violate the rule that, in ruling on a motion for class certification, the trial court does not consider whether the claims have merit. The court is to consider only whether the theory of recovery is amenable to class treatment. (*Sarun v. Dignity Health* (2019) 41 Cal.App.5th 1119, 1131.) Plaintiffs argue the trial court was required to assume SoCal Pizza's policies violated California law for purposes of the motion for class certification. But any assumption about the validity of the claim does not resolve whether the claim is appropriate for class certification.

classwide basis as a legal matter based on common proof." (*Id.* at p. 238.) Similarly, *Employment Development* involved a situation in which "a large number of applicants or recipients have been improperly denied governmental benefits on the basis of an invalid regulation, statute or administrative practice." (*Id.* at p. 265.) Both *Faulkinbury* and *Employment Development* are therefore distinguishable.

III.

JUDGMENT ON THE PLEADINGS AS TO REST BREAK CLASS BASED ON STATUTE OF LIMITATIONS

*A. Factual Background*

In 2008, SoCal Pizza had a written policy requiring employees to remain on the work premises during breaks. Although the company's 2010 and 2012 written policies did not contain that requirement, plaintiffs allege it remained an unwritten policy at all times. Plaintiffs allege SoCal Pizza, "[b]y its failure to provide rest periods for every four hours or major fraction thereof worked per day by non-exempt employees, and failing to provide one hour's wages at their regular rate of pay for such rest period violations, as alleged above . . . willfully violated the provisions of Labor Code section 226.7 and IWC Wage Orders."

In March 2021, the trial court granted certification of a rest break and derivative waiting time penalties class comprised of "[a]ll individuals who were employed as non-exempt, hourly-paid employees by Defendant in California and worked at least one shift greater than 3.5 hours in length at any time from September 30, 2007 through the date of class certification [March 8, 2021]." Plaintiff Falero, whose complaint was initially filed April 10, 2017, was the named plaintiff representing the rest break class. "The theory of liability—that [Defendant] has a uniform [rest break

25

policy], and that that policy, measured against wage order requirements, allegedly violates the law—is by its nature a common question eminently suited for class treatment." (*Brinker, supra,* 53 Cal.4th at p. 1033.)

In May 2021, SoCal Pizza filed a motion for judgment on the pleadings of the rest break claims based on the statute of limitations. Of the named plaintiffs in the second amended consolidated complaint who asserted a rest period claim, Hernandez filed his complaint the earliest, on May 7, 2014. The trial court granted the motion, resulting in the dismissal of the rest break claim as to any violations occurring before May 7, 2010.[14]

## B. Standard of Review

We review the order granting judgment on the pleadings de novo. (*Lowry v. Port San Luis Harbor Dist.* (2020) 56 Cal.App.5th 211, 217.) We accept as true all material facts alleged in the complaint, and we may consider other matters that are subject to judicial notice. (*Ibid.*)

## C. Analysis – Relation Back Doctrine

In opposition to the motion for judgment on the pleadings, plaintiffs argued the rest break class claims were not time barred because they related back to the Ramirez Action, which was filed on September 20, 2011, but dismissed on summary adjudication in 2015.

The relation back doctrine applies to an amendment to a complaint to add a plaintiff with standing. (*Estrada v. Royalty Carpet Mills,*

---

[14] A claim based on the failure to permit rest breaks under Labor Code section 226.7 generally has a three-year statute of limitations. (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1099.) But where, as here, the plaintiff also pursues an action for restitution under the Business and Professions Code, the statute of limitations is extended to four years. (*Falk v. Children's Hospital Los Angeles* (2015) 237 Cal.App.4th 1454, 1462, fn. 12.)

*Inc.* (2022) 76 Cal.App.5th 685, 719.) "Under the relation-back doctrine, a court will ordinarily deem a later-filed pleading to have been filed at the time of an earlier complaint if the amended complaint is based on the same general set of facts." (*Curtis Engineering Corp. v. Superior Court* (2017) 16 Cal.App.5th 542, 548.) "The relation-back doctrine requires that the amended complaint must (1) rest on the *same general set of facts*, (2) involve the *same injury*, and (3) refer to the *same instrumentality*, as the original one." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 408–409.)

The trial court found the Falero Action could not relate back to the Ramirez Action because the Ramirez Action was summarily adjudicated on the merits before the Falero Action was filed. Through the motion for summary adjudication, the court decided on the merits that Ramirez did not suffer a rest break violation.

We agree with the trial court's conclusion. Because the Ramirez Action's rest break claim was dismissed on the merits, any later-filed rest break claims could not relate back to it. (See *O'Donnell v. Vencor Inc.* (9th Cir. 2006) 466 F.3d 1104, 1111 [second complaint did not relate back to first complaint that had been dismissed without prejudice because second complaint was a separate action not an amendment to first complaint]; *Eng v. County of Los Angeles* (C.D.Cal. 2010) 737 F.Supp.2d 1078, 1099 [relation back doctrine "does not apply with equal force to actions that are, in actuality, entirely new or separate proceedings"].)

Plaintiffs' reliance on *Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235 (*Branick*) is misplaced. In *Branick*, two individuals (Branick and Campbell) who had not done business with Downey Savings and Loan (Downey) sued for violation of section 17200 of the Business and Professions Code, alleging Downey had made misrepresentations and

27

overcharged customers for various fees. (*Branick, supra*, at p. 239.) After Proposition 64 took effect, Branick and Campbell did not have standing to bring a section 17200 claim because they had not suffered an injury in fact. (*Branick, supra*, at p. 240.) The Supreme Court concluded Proposition 64 did not forbid amendment of a complaint to substitute a new plaintiff with standing. (*Branick, supra*, at p. 242.) Because Proposition 64 had been approved by the electorate while the case was on appeal, the Supreme Court remanded the case to the trial court to determine whether an amendment should be permitted. (*Branick, supra*, at pp. 242–243.) *Branick* is distinguishable because the plaintiffs did not lose on the merits. Rather, they lost standing to bring the unfair competition claim when the statute was revised.

*D. Analysis – Tolling*

Plaintiffs also argued the running of the statute of limitations was tolled. They reason that, although the putative claim in the Ramirez Action was dismissed in 2015, Falero and Hernandez were members of the putative class Ramirez purported to represent. Falero therefore argues the lack of a ruling on class certification of the rest break claim in the Ramirez Action tolled the running of the statute of limitations on her claims.

The trial court ruled Falero could not rely on tolling: "If Falero wanted to bring class claims dating back to 2007, she should have filed suit back when those claims were within the limitation period. As *China Agritech* [*, Inc. v. Resh* (2018) 584 U.S. 732] explains, even if she reasonably relied on prior plaintiffs, she can hardly be said to be diligent in representing the interests of a since-2007 class if she didn't file suit until 2017. (She certainly *could have* sued in a timely fashion. She began working for So Cal Pizza in 2008.) As *Fierro* [*v. Landry's Restaurant, Inc.* (2019) 32 Cal.App.5th 276]

28

explains, the goal is efficient, economical, and *early* resolution of class claims. Allowing Falero to reach back to 2007 when she didn't file suit until 2017 undermines that goal." We find no error.

"[T]he timely filing of a class action tolls the applicable statute of limitations for all persons encompassed by the class complaint. Where class-action status has been denied, . . . members of the failed class could timely intervene as individual plaintiffs in the still-pending action, shorn of its class character." (*China Agritech, Inc. v. Resh, supra,* 584 U.S. at p. 725 (*China Agritech*), citing *American Pipe & Construction Co. v. Utah* (1974) 414 U.S. 538, 544, 552–553.) The statute of limitations is not tolled, however, to allow a putative class member to file a new class action complaint after class certification is denied. (*China Agritech, supra*, at pp. 735–736.)

The *China Agritech* rule applies to cases pending in California courts as well as federal courts. "In the event a plaintiff class is not certified, the pendency of the putative class's claim does not toll the applicable statute of limitations to the same class claim alleged in a later action. Thus, upon denial of class certification in an action, a putative class member may not commence the same class claim in a new action beyond the time allowed by the limitation period applicable to the class claim." (*Fierro v. Landry's Restaurant, Inc., supra,* 32 Cal.App.5th at p. 297.)

Plaintiffs' argument is contrary to the policies that underlie the doctrine of tolling. "Statutes of limitations serve to promote efficiency by encouraging the filing of competing class actions early in the litigation, so that a determination of class certification as well as how the two actions should be considered, can also be made early. [Citation.] Under Plaintiff's proposal, class claims could be brought indefinitely and without regard to statutes of limitations, so long as the certification of a class remained

29

undetermined. This approach would be contrary to the policy purposes of the class action tolling doctrines: [¶] '[I]f class treatment is appropriate, all potential class representatives will be able to come forward *prior to the expiration of the applicable statute(s) of limitations*, and the superior court can select the best class representative(s) and counsel, as well as the most efficient and economical way of resolving the class claims. Likewise, if the class mechanism is not a viable option, *a denial of class certification will be made early*, and the rights of all parties and putative class members will be determined at the outset of the case.'" (*Carmel v. Mizuho Bank Ltd.* (C.D.Cal., Nov. 14, 2019, No. LA CV18-02483 JAK (Ex)) 2019 U.S.Dist. Lexis 233355 at pp. *53–*54.)

Although the procedural status of this case is different than in *China Agritech* or *Fierro v. Landry's Restaurant, Inc.*, we conclude the result should be the same. Here, the Ramirez Action, filed in 2011 as a putative class action, asserted a cause of action for failure to provide rest breaks and meal breaks. The case was resolved against Ramirez on the merits in 2015, before class certification.

Hernandez asserted his rest and meal break claims in 2014, and Falero alleged them in 2017. "Ordinarily, to benefit from equitable tolling, plaintiffs must demonstrate that they have been diligent in pursuit of their claims. [Citations.] Even *American Pipe*, which did not analyze 'criteria of the formal doctrine of equitable tolling in any direct manner,' [citation], observed that tolling was permissible in the circumstances because plaintiffs who later intervened to pursue individual claims had not slept on their rights, [citation]. Those plaintiffs reasonably relied on the class representative, who sued timely, to protect their interests in their individual claims. [Citation.] A would-be class representative who commences suit after expiration of the

30

limitation period, however, can hardly qualify as diligent in asserting claims and pursuing relief. Her interest in representing the class as lead plaintiff, therefore, would not be preserved by the prior plaintiff's timely filed class suit." (*China Agritech, supra*, 584 U.S. at p. 743.)

The putative class action filed by Falero cannot benefit from tolling because the earlier Ramirez Action was deemed not viable. At most, the pendency of the Ramirez Action would have tolled Falero's individual claims, not the claims of the putative class. Falero was not diligent in seeking to represent the class on the meal and rest break claims. The trial court did not err in concluding any claims accruing more than four years before the filing of the Hernandez Action were time-barred.

IV.

WAITING TIME PENALTY CLAIM DISMISSED

The trial court dismissed the waiting time claim in its entirety because it found it was "entirely" derivative of the rest break claim.

In *Naranjo v. Spectrum Security Services, Inc.* (2022) 13 Cal.5th 93, the California Supreme Court specifically rejected this argument. "We reverse in part the judgment of the Court of Appeal, insofar as it held the failure to timely pay or report section 226.7 premium pay can never support relief under Labor Code sections 203 and 226 . . . ." (*Id.* at p. 126.)

SoCal Pizza addresses neither the *Naranjo* case nor the issue of the dismissal of the waiting time claim in its respondent's brief. We reverse the order dismissing the waiting time class.

31

# V.

## ARBITRATION OF FLSA CLAIM

### A. Factual Background

Midling was employed as a delivery driver by SoCal Pizza from 2014 to 2016, and he signed an arbitration agreement in connection with his employment. That agreement provides for binding arbitration of all disputes "related in any way" to Midling's employment. It specifically applies to claims under the FLSA and waives any right to bring a class, collective, or representative action.

The FLSA claim was first raised in May 2017 in the fourth amended class action complaint in the Hernandez/Ramirez/Levonian action. Plaintiffs alleged SoCal Pizza failed to pay its delivery drivers minimum wage for their time "'on the road.'" Some portion of the FLSA claim was settled.

Midling was named as a plaintiff for the first time in the second amended consolidated complaint filed October 25, 2019, and was the only named plaintiff on the FLSA claim. SoCal Pizza filed a motion to compel arbitration based on Midling's arbitration agreement. The trial court granted the motion, ordered that Midling's claims be arbitrated on an individual basis, and stayed the arbitration pending the outcome of the litigation proceedings.

### B. Standard of Review

On appeal, plaintiffs argue SoCal Pizza waived the right to arbitrate Midling's FLSA claim. We review this claim for substantial evidence. (*Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205

Cal.App.4th 436, 443; see *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196 (*St. Agnes*).)[15]

*C. Is the Trial Court's Order Properly Before Us on Appeal?*

SoCal Pizza argues this issue is not properly before this appellate court because the notice of appeal does not reference the order granting the motion to compel arbitration of Midling's claims. SoCal Pizza also argues Midling is not a party to the appeal, and the order in question applies only to him. The notice of appeal, filed January 20, 2023, identified Ramirez and Aleksandra Godanis as the appealing parties and identified the stipulated summary adjudication order dated December 8, 2022 as the order from which an appeal was taken. An amended notice of appeal was filed January 31, 2023, identifying Ramirez, Godanis, Huerta, Falero, Deanda, Gregory, Najarro, and Hernandez as appellants and stating the appeal was taken from "the judgment entered in this case on December 8, 2022 as well as the applicable interlocutory orders giving rise to this judgment under the death knell doctrine, including the Court's 6/24/16 Order denying class certification, 9/15/17 Order denying preliminary settlement approval, 3/8/21 Order denying

---

[15] Plaintiffs contend the appropriate standard of review is de novo because the only issue is a legal one—whether a substituted plaintiff stands in the shoes of the predecessor plaintiff for the purpose of determining waiver. We disagree. Plaintiffs cite *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, in which the Supreme Court reviewed de novo the lower courts' determination the Federal Arbitration Act applied, as well as its interpretation of the arbitration agreement's provisions and its determination that the arbitration agreement was unconscionable. (*Id.* at pp. 234, 236.) Where, as here, the issue is whether a party acted in a manner inconsistent with its right to demand arbitration, we review for substantial evidence. (*St. Agnes, supra*, 31 Cal.4th at p. 1196; *Bower v. Inter-Con Security Systems, Inc.* (2014) 232 Cal.App.4th 1035, 1043.)

class certification, 6/14/21 Order denying class certification, 6/28/21 Order granting Judgment on the Pleadings, and 9/3/21 Order decertifying class."

As SoCal Pizza concedes, the trial court ordered Midling's individual claims to arbitration and dismissed the FLSA claim based on the collective action waiver in Midling's arbitration agreement at the same time. The order is therefore an "applicable interlocutory order[] giving rise to this judgment under the death knell doctrine" and covered by the notice of appeal. (See *K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 882 [notices of appeal must be liberally construed].) We therefore proceed to the merits of the issue.[16]

*D. Analysis*

To determine whether a party has waived its right to arbitrate, the court considers the following factors: "'"(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; [and] (5) 'whether important intervening steps [e.g.,

---

[16] We asked the parties to address whether the order compelling Midling's claims to arbitration was appealable. Although an order compelling arbitration generally is not appealable (Code Civ. Proc., §§ 1294, 1294.2; *Mills v. Facility Solutions Group, Inc.* (2022) 84 Cal.App.5th 1035, 1049), in this case the order was the "death knell" of the class members' claims. Therefore, under the rule announced in *Miranda v. Anderson Enterprises, Inc.* (2015) 241 Cal.App.4th 196, 199, and *Franco v. Athens Disposal Co., Inc.* (2009) 171 Cal.App.4th 1277, 1288, we conclude the order is appealable.

taking advantage of judicial discovery procedures not available in arbitration] had taken place.”’”’” (*St. Agnes, supra,* 31 Cal.4th at p. 1196.)[17] “[A] party who resists arbitration on the ground of waiver bears a heavy burden [citations], and any doubts regarding a waiver allegation should be resolved in favor of arbitration [citation].” (*St. Agnes* at p. 1195.)

The trial court found SoCal Pizza's actions were not inconsistent with its right to compel arbitration because it sought arbitration of Midling's claims promptly after he was added as a named plaintiff. The court found the appropriate question was whether SoCal Pizza had acted inconsistently with its right to compel arbitration of *Midling's claims*, not its right to compel arbitration in “some general sense.”

The court found SoCal Pizza had not invoked the machinery of litigation as to the FLSA claims being asserted by Midling. The claims asserted by Midling were new, and the litigation machinery had only been used in connection with other wage claims that were previously settled.

The court found there had been no delay because, again, SoCal Pizza sought to compel arbitration of Midling's claims promptly after he was named.

As to intervening steps, the trial court found none could have taken place with respect to Midling's current claims because those claims had

---

[17] *St. Agnes* also held the party seeking to avoid arbitration must show the delay in seeking arbitration prejudiced it. (*St. Agnes, supra*, 31 Cal.4th at p. 1196.) The trial court here found Midling had not established any prejudice. Prejudice is no longer a factor in determining whether there has been waiver of an arbitration provision. (*Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562, 569.) Because the trial court's findings on the other factors were amply supported by the evidence, we need not remand for the court to reconsider the factors excluding prejudice.

just been asserted. The court also rejected Midling's argument that SoCal Pizza had taken advantage of discovery that would have been unavailable to it in arbitration for two reasons. First, discovery had been conducted with respect to the PAGA claim, which could not have been compelled to arbitration; that discovery overlapped with class-related discovery that Midling was now complaining about. Second, although SoCal Pizza might have learned about the litigation strategies of other plaintiffs through discovery, because Midling's claims were new, SoCal Pizza could not have learned about his litigation strategies through earlier discovery.

Each of the trial court's findings is supported by substantial evidence. The FLSA claims asserted by Midling must be different than the claims previously asserted in the Ramirez action because the parties settled those claims. The timeline shows SoCal Pizza promptly demanded arbitration when first Raigoza, and then Midling, were named as the putative class representatives on the new FLSA claims.

Plaintiffs cite *Sky Sports, Inc. v. Superior Court* (2011) 201 Cal.App.4th 1363, *Sprunk v. Prisma LLC* (2017) 14 Cal.App.5th 785, *Roman v. Jan-Pro Franchising International, Inc.* (N.D.Cal. 2022) 342 F.R.D. 274, and *Bower v. Inter-Con Security Systems, supra,* 232 Cal.App.4th 1035 in support of their argument that SoCal Pizza waived the right to compel arbitration by Midling.

In *Sky Sports, Inc. v. Superior Court, supra*, 201 Cal.App.4th 1363, the named plaintiff sought to represent a class of employees for rest break violation claims. (*Id.* at p. 1365.) The named plaintiff had not signed an arbitration agreement, but a "high percentage" of the proposed class members had. (*Id.* at p. 1366.) The trial court granted the motion for class certification over the defendant's argument the plaintiff was

36

not an adequate class representative and was using the class action to avoid an enforceable arbitration provision. (*Ibid.*) The appellate court held the defendant's delay in bringing a motion did not waive its right to compel arbitration because such a motion could not have been granted before a class was certified. (*Id.* at p. 1365.)

In *Sprunk v. Prisma LLC, supra*, 14 Cal.App.5th 785, the appellate court affirmed the trial court's determination the defendant had waived its right to compel arbitration. The putative class representative, as well as all potential class members, had signed an arbitration agreement. (*Id.* at p. 789.) The defendant initially had filed a motion to compel arbitration of Sprunk's individual claims, but withdrew the motion and proceeded with discovery. (*Id.* at pp. 790–791.) After the trial court certified a class, the defendant filed motions to compel arbitration of all class claims by all class members. (*Id.* at p. 791.) The appellate court concluded the defendant's delay in moving to compel arbitration against the named class representative waived its right to compel arbitration against the then-unnamed class members. (*Id.* at pp. 796–797.)

In *Roman v. Jan-Pro Franchising International, Inc., supra*, 342 F.R.D. 274, the defendant conceded it had waived the right to compel arbitration against the named plaintiffs and therefore argued those named plaintiffs could not meet the typicality and adequacy factors for class certification. (*Id.* at p. 290.) The district court noted the defendant *could* have moved to compel the named plaintiffs to arbitrate, but did not do so. (*Id.* at p. 293.) The defendant instead sought a merits-based decision in the trial court before the class was certified. (*Id.* at pp. 293–294.) Under these circumstances, the district court found the defendant was "attempt[ing] to

37

have it both ways; to test the waters in court before playing the arbitration card." (*Id.* at p. 294.)

In *Bower v. Inter-Con Security Systems, Inc., supra,* 232 Cal.App.4th 1035, the plaintiff filed a lawsuit in August 2011 alleging wage and hour claims against the defendant on behalf of a putative class of armed security guards. (*Id.* at p. 1039.) The parties engaged in discovery relating to both the plaintiff's individual claims and the class's claims. (*Id.* at pp. 1039–1040.) The parties then agreed to stay discovery to engage in class wide settlement discussions. (*Id.* at p. 1040.) After settlement discussions failed, the plaintiff filed a motion for leave to file a first amended complaint (which would have added a class of unarmed security guards) and a motion to compel discovery responses. (*Id.* at p. 1040.) The defendant then filed a motion to compel arbitration. (*Ibid.*) The trial court denied the motion on the ground the defendant had waived the right to arbitrate. (*Id.* at p. 1041.) The court focused primarily on the defendant's participation in class discovery, which was inconsistent with its current argument that the case should be arbitrated on an individual basis. (*Ibid.*) Of particular interest to the present case is that "The court observed that any waiver of arbitration only applied to the original complaint and not to any amended complaint that might substantially increase the size of the putative class." (*Ibid.*)

These cases are all factually distinguishable. SoCal Pizza sought arbitration as soon as there was a named plaintiff on the FLSA claim who had signed an arbitration agreement covering that claim—first Raigoza and then Midling. The claims being asserted by Midling are different than those previously alleged and resolved through settlement.

It is undisputed that the motion to compel Midling to arbitration was filed just days after the filing of the second amended consolidated

38

complaint naming Midling as a putative class representative. As the trial court noted in this case, "Defendant's actions are not inconsistent with its right to compel arbitration of *Midling's* present claims for the simple reason that he had not advanced the claims at issue until six weeks ago."  Where the original named plaintiff was not subject to an arbitration agreement, litigation activities that take place while that plaintiff attempts to represent the putative class do not waive the right to compel arbitration of a newly named class representative who is subject to an arbitration agreement.

## DISPOSITION

The judgment is affirmed in part, reversed in part, and remanded. The appeal from the order granting the motion to compel arbitration is dismissed. In the interests of justice, SoCal Pizza to recover costs on appeal.


GOODING, J.

WE CONCUR:


MOORE, ACTING P. J.


MOTOIKE, J.


39